**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

BÁRBARA PALOMINO ALONSO,

Plaintiff,

v.

STONEMOR PUERTO RICO, LLC, et al.,

Defendants.

CIVIL NO.: 19-1052 (MEL)

**OPINION AND ORDER**

On July 1, 2019, Ms. Bárbara Palomino Alonso ("Plaintiff") filed an amended complaint against StoneMor Puerto Rico, LLC, StoneMor Puerto Rico Cemetery and Funeral, Inc., StoneMor Puerto Rico Subsidiary, LLC, and StoneMor GP, LLC ("Defendants" or "StoneMor"). ECF No. 37. In her complaint, Plaintiff alleges that she was subjected to a hostile work environment and constructively discharged based on her religious beliefs and national origin in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, and Title 29, Annotated Laws of Puerto Rico, Section 146 ("Law 100"). Id. at 9-10, 13. Plaintiff also alleges that she was retaliated against for filing charges of employment discrimination with the Equal Employment Opportunity Commission ("EEOC") in violation of Title VII. Id. at 10-12. Additionally, Plaintiff claims that she was constructively terminated without "just cause" in violation of Title 29, Annotated Laws of Puerto Rico, Section 185a ("Law 80"). Id. at 12.

The case record reflects substantial delays for reasons that are not attributable to the Defendants. On August 28, 2020, three days before the discovery deadline expired, Plaintiff's counsel José O. Vázquez García filed a motion requesting leave to withdraw as counsel of record due to Plaintiff's request that he resign from the case. ECF No. 97, at 6; ECF No. 105. Counsel

Vázquez García's request was denied without prejudice. ECF No. 106. Plaintiff was granted two weeks to retain the services of new counsel and was put on notice "that the discovery phase of the case will not be reopened simply because there is a change in legal representation. The deadlines to file dispositive motions and to file responses in opposition to said motions remain as set." ECF Nos. 82, 106. On September 14, 2020, after the deadline to conclude discovery had passed, counsel Vivian Patricia Ramos Santiago filed a notice of appearance as counsel for Plaintiff. ECF No. 107. Hence, counsel Vázquez García's second request to withdraw as counsel of record for Plaintiff was granted. ECF Nos. 108, 110.

On September 30, 2020, Defendants filed the motion for summary judgment that is pending before the court. ECF No. 114. On October 16, 2020, Plaintiff filed a *pro se* motion informing that counsel Ramos Santiago had been hospitalized and requested "at least 45 days to answer any motions or orders." ECF No. 121. Plaintiff's request for a 45-day extension of time from October 16, 2020 to respond to the motion for summary judgment was granted. ECF No. 125. On December 1, 2020, Defendants filed a motion requesting that Plaintiff be ordered to show cause regarding her failure to respond to the pending motion for summary judgment "even after the lapse of the 45-day extension she requested or otherwise inform regarding the status of her legal representation." ECF No. 124, at 3. On December 2, 2020, Plaintiff was ordered to show cause as to why Defendants' motion for summary judgment should not be deemed unopposed. ECF No. 126.

On December 9, 2020, Plaintiff's counsel informed that she was admitted to the hospital on October 7, 2020 after being diagnosed with COVID-19 where she remained until October 20, 2020. ECF No. 127, at 1. Plaintiff's counsel explained that she was unable to return to work for approximately eight weeks. Id. Plaintiff requested a second extension of time until December 18,

2020 to file a response to Defendants' motion for summary judgment. Id. at 2. Plaintiff's second request for an extension of time was granted. ECF No. 128.

On December 21, 2020, after the deadline to file a response to the motion for summary judgment expired, Defendants filed a motion requesting that their motion for summary judgment be deemed unopposed. ECF No. 129. On December 22, 2020, Plaintiff's counsel requested leave to withdraw as counsel of record "due to personal reasons related to the appearing counsel's health." ECF No. 130, at 1. Plaintiff's counsel's request to withdraw was denied. ECF No. 131. The court ordered Plaintiff's counsel to "file by December 29, 2020 a motion, under restricted access if she so wishes, providing a medical certification specifying the particular health condition that prevents her to work and for how long she will be unable to work." Id. Plaintiff's counsel was also ordered to "inform in her motion whether she has also requested leave to withdraw in *all* her cases and not only in this one due to health reasons." Id.[1] Plaintiff's counsel failed to comply with the court's order.

In light of Plaintiff's repeated failure to file a timely response to Defendants' motion for summary judgment, Defendants' motion to deem its motion for summary judgment submitted without opposition (ECF No. 129) was granted. ECF No. 132. Thus, Defendants' motion for summary judgment (ECF No. 114) is deemed unopposed. Id.

On February 9, 2021, Plaintiff filed a *pro se* motion requesting an update on the status of her case and a reasonable amount of time to find a new attorney.  ECF No. 133. On February 9, 2021, the court informed that "[a]s of the date of this order, counsel Vivian Patricia Ramos-Santiago has not been granted leave to withdraw as counsel of record. See ECF No. 131. The status of the case is that the discovery phase has concluded and the pending motion for summary

---

[1] The order issued on December 22, 2020 explicitly indicated that upon compliance with said order, the court would reevaluate counsel Ramos Santiago's request for leave to withdraw as counsel of record. ECF No. 131.

judgment has been deemed unopposed. See ECF Nos. 84, 132. Plaintiff is free to hire a new lawyer if she so wishes, but the discovery phase of the case will not be reopened." ECF No. 134.

On February 23, 2021, Plaintiff filed a second *pro se* motion requesting that she be provided with "at least 45 additional days to seek proper counsel in order to be able to comply with any orders from this Honorable Court." ECF No. 137. On February 24, 2021, the court informed that "[a]s previously indicated, plaintiff may retain the services of a lawyer if she so wishes. However, the court will not stay the proceedings in this case taking into account that plaintiff already had an opportunity to change her legal representation." ECF No. 138.

## I.      Standard of Review

The purpose of summary judgment "is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992) (citations omitted). Summary judgment is granted when the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it has the potential of determining the outcome of the litigation." Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 782 (1st Cir. 2011) (quoting Rodríguez-Rivera v. Federico Trilla Reg'l Hosp., 532 F.3d 28, 30 (1st Cir. 2008)).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant presents a properly focused motion "averring 'an absence of evidence to support the nonmoving party's case[,]' [t]he burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both 'genuine' and 'material.'" Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)).

4

For issues where the nonmoving party bears the ultimate burden of proof, the party cannot merely "rely on an absence of competent evidence, but must affirmatively point to specific facts [in the record] that demonstrate the existence of an authentic dispute." McCarthy v. Nw. Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995) (citation omitted). The party need not, however, "rely only on *uncontradicted* evidence . . . .  So long as the [party]'s evidence is both cognizable and sufficiently strong to support a verdict in her favor, the factfinder must be allowed to determine which version of the facts is most compelling." Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004) (emphasis in original) (citation omitted).

In assessing a motion for summary judgment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan, 904 F.2d at 115. There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood." Greenburg v. P. R. Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987). The court may, however, safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (citations omitted).

## II.      Uncontested Material Facts

### A. General Information about Defendants

On December 21, 2019, StoneMor GP, LLC converted into StoneMor, Inc. ECF No. 122-1, at 1, ¶ 1; ECF No. 114-10, at 1, ¶ 2. StoneMor, Inc., headquartered in Trevose, Pennsylvania, is the second largest owner, through subsidiaries, of cemeteries in the United States. ECF No. 122-1, at 1, ¶ 2; ECF No. 114-10, at 1, ¶ 3. StoneMor, Inc. owns over 300 cemeteries and almost

100 funeral homes throughout the continental United States and Puerto Rico. Id. StoneMor,

Inc.'s cemetery products and services are sold on both a pre-need (before death) and at-need (at

death)[2] basis and include burial lots, lawn and mausoleum crypts and niches, burial vaults,

caskets, memorials, and services related to the installation of this merchandise. ECF No. 122-1,

at 2, ¶ 3; ECF No. 114-10, at 1, ¶ 4. StoneMor, Inc. has three subsidiaries authorized to do

business in Puerto Rico: (1) StoneMor Puerto Rico, LLC, (2) StoneMor Puerto Rico Cemetery

and Funeral, Inc., and (3) StoneMor Puerto Rico Subsidiary, LLC. ECF No. 122-1, at 2, ¶ 4; ECF

No. 114-10, at 1, ¶ 5.

### B. Plaintiff's Claims of Discrimination and Retaliation

Plaintiff is of Cuban national origin. ECF No. 122-1, at 2, ¶ 5; ECF No. 37, at 2, ¶ 5; ECF

No. 54, at 2, ¶ 5. Plaintiff is Catholic and also practices the Yoruba religion. ECF No. 122-1, at

2, ¶ 6; ECF No. 122-3, at 43, 50. In 2005, Plaintiff left Cuba and settled in Puerto Rico. ECF No.

122-1, at 2, ¶ 7; ECF No. 122-3, at 3-4.

On February 13, 2012, StoneMor hired Plaintiff as a family service counselor at El

Señorial Memorial Park. ECF No. 122-1, at 2-3, ¶ 8; ECF No. 122-6. Plaintiff's duties as a

family service counselor included assisting customers in making decisions regarding funeral

arrangements in "pre-need" and "at-need" circumstances and selling StoneMor's merchandise

and services. ECF No. 122-1, at 4, ¶ 14; ECF No. 122-3, at 11-13; ECF No. 114-18, at 1.

Plaintiff's compensation was based on sales commissions with a minimum guaranteed salary of

$7.25 per hour. ECF No. 122-1, at 4, ¶ 15; ECF No. 122-3, at 16-17.

---

[2] An "at need" sale is any sale made for immediate interment from a walk-in or call-in where death has already taken place or where a non-accidental death occurs within 30 days from the time the contract is written and a down payment received. ECF No. 122-1, at 11, ¶ 40; ECF No. 114-31, at 3.

At the time of her hiring, Plaintiff received a copy of StoneMor's policies and procedures including, but not limited to, the anti-harassment policy and ethics code. Plaintiff read all of the policies. ECF No. 122-1, at 3, ¶ 9; ECF No. 122-3, at 22; ECF No. 122-9, at 2. On April 10, 2014, Plaintiff once again received copies of StoneMor's policies including, but not limited to, the anti-harassment policy and ethics code. Plaintiff read all of the policies. ECF No. 122-1, at 3, ¶ 10; ECF No. 122-3, at 27; ECF No. 122-10.

On December 30, 2015, Plaintiff received a copy of StoneMor's revised employee handbook. ECF No. 122-1, at 3, ¶ 11; ECF No. 122-3, at 29; ECF No. 122-11. StoneMor's employee handbook states that the company provides "equal employment opportunity for all individuals regardless of their age, sex, sexual tendency, color, race, national origin, religion, marital status, veteran status, political beliefs, the presence of a disability that impedes the performance of the essential duties of a job, or any other protected class under the corresponding law." ECF No. 122-1, at 3, ¶ 12; ECF No. 122-12, at 1. StoneMor's employee handbook also states that the company does not tolerate discrimination or harassment on the basis of religion or national origin. ECF No. 122-1, at 3, ¶ 13; ECF No. 122-12, at 5. According to the employee handbook, StoneMor does not tolerate "any type of retaliation against any employee due to the filing of a discrimination or sexual harassment complaint, and/or all forms of harassment pursuant to this policy." ECF No. 122-1, at 3, ¶ 13; ECF No. 122-12, at 6. The employee handbook provides the procedures for employees to notify the company of harassment or discrimination. ECF No. 122-1, at 4, ¶ 13; ECF No. 122-12, at 6. The procedures include notifying a supervisor, next-level manager, human resource department, or the ethics hotline. Id.

Plaintiff was a non-exempt employee. Therefore, Plaintiff was required to record her work time four times every workday: (1) the entry time to work, (2) the departure time for lunch,

(3) the return time from lunch, and (4) the departure time from her workday. ECF No. 122-1, at 13, ¶ 49; ECF No. 122-3, at 93-94; ECF No. 122-12, at 2-3. Throughout her employment with StoneMor, Plaintiff received several admonishments regarding her non-compliance with attendance policies, specifically as it related to her obligation to accurately record her time and for missing punches. ECF No. 122-1, at 4-5, ¶ 17; ECF No. 122-3, at 94-95; ECF No. 114-25, at 1-2, ¶ 6. Plaintiff was also the subject of several investigations regarding unprofessional and disruptive behavior and co-worker complaints alleging disrespectful conduct and on several occasions, she was disciplined for conduct of this kind. ECF No. 122-1, at 5, ¶ 18; ECF No. 122-13; ECF No. 122-14; ECF No. 114-25, at 2, ¶ 7.

On March 3, 2017, Plaintiff was issued a written admonishment suspending her from employment and salary for five days due to an incident that occurred on February 10, 2017. ECF No. 122-1, at 5, ¶ 20; ECF No. 122-14. On said date, Plaintiff entered the office of Ms. Carmen Rivera[3] ("Ms. Rivera") without authorization and opened and read a file that was on her desk. Plaintiff then exited the office and rebuked her co-worker, Ms. Carmen Rivas ("Ms. Rivas"), a sales associate. Plaintiff returned to Ms. Rivera's office and told her that Ms. Rivas had stolen her client. Ms. Rivas then entered Ms. Rivera's office and explained that the client had specifically asked for Ms. Rivas. Plaintiff responded to Ms. Rivas, "You stole it, you're a rascal, I gave guidance to that client." Ms. Rivera had to stand between Plaintiff and Ms. Rivas to stop further confrontation. Id.

On March 27, 2017, Plaintiff sent an email to her supervisor, Ms. Alina Souto ("Ms. Souto"), complaining about Ms. Rivera's handling of a particular sale. ECF No. 122-1, at 6, ¶ 21; ECF No. 122-17; ECF No. 122-14. In the email, Plaintiff informed that "I think it is time

---

[3] Ms. Rivera is the area funeral administrator and El Señorial Memorial Park location manager. ECF No. 114-25, at 2, ¶ 8.

to ask for a transfer to another location, because I support my family and unfortunately since 2013 I have suffered various attacks." Id. On May 17, 2017, Plaintiff sent another email to Ms. Souto relaying disagreements with Ms. Rivera. In the email, Plaintiff informed that "I believe that my job is in jeopardy and honestly every day the interaction with [Ms. Rivera] becomes more difficult I am at your disposal for a transfer to another location." ECF No. 122-1, at 6, ¶ 22; ECF No. 122-16.

On June 11, 2017, Plaintiff sent an email to Ms. Omayra Sánchez ("Ms. Sánchez"), human resources generalist, complaining about a quote that was placed in the background screen of the reception desk computer for general use at El Señorial Memorial Park. ECF No. 122-1, at 6, 15, ¶¶ 23, 61; ECF No. 122-18; ECF No. 114-25, at 2, ¶ 9. The quote in the background screen read, "Humility is the sparkle that makes an authentic leader shine – Ismael Cala." ECF No. 122-1, at 6, ¶ 23; ECF No. 122-4. Plaintiff was bothered by the background screen because she believed that it was an attack against Ms. Souto. ECF No. 122-1, at 7, ¶ 24; ECF No. 122-3, at 36. Plaintiff does not know who placed the quote in the background screen of the reception desk computer. ECF No. 122-1, at 7, ¶ 25; ECF No. 122-3, at 35-36.

Plaintiff also complained in the June 11, 2017 email about a sticker that was placed on the reception desk computer monitor. The sticker read, "If you remain in me and my words remain in you, ask all that you want and it will be done." ECF No. 122-1, at 6, ¶ 23; ECF No. 122-18; ECF No. 122-3, at 37; ECF No. 114-25, at 2, ¶ 9. Plaintiff believed that the sticker was an Evangelical Christian message and that religious messages should not be permitted in work areas. ECF No. 122-1, at 7, ¶ 26; ECF No. 122-3, at 37-40. Plaintiff does not know who placed the sticker on the computer monitor. ECF No. 122-1, at 7, ¶ 27; ECF No. 122-3, at 38. On June 12, 2017, Ms. Sánchez asked Ms. Marilú Avilés ("Ms. Avilés"), the office manager, to remove

the background screen and sticker from the reception desk computer. ECF No. 122-1, at 7, ¶ 28; ECF No. 114-25, at 2, ¶ 10. The background screen and sticker had already been removed when Plaintiff arrived to work on June 12, 2017. ECF No. 122-1, at 7, ¶ 28; ECF No. 122-3, at 41-42.

On June 21, 2017, Ms. Sánchez held a meeting with Plaintiff and Ms. Aida Pereira ("Ms. Pereira"), human resources clerk, regarding Plaintiff's May 17, 2017 email to Ms. Souto. ECF No. 122-1, at 7-8, ¶ 29; ECF No. 122-5; ECF No. 122-16. Plaintiff's complaints against Ms. Rivera were discussed during the meeting. Id. Plaintiff also complained in the meeting that Ms. Avilés sang songs by Cuban artist Celia Cruz to her and that Ms. Avilés called her "Miss Bárbara" using the accent of Peruvian talk show host Ms. Laura Bozzo. Plaintiff requested a transfer from El Señorial Memorial Park at the meeting. ECF No. 122-1, at 8, ¶ 29; ECF No. 122-5, at 2; ECF No. 114-25, at 2, ¶ 12.

On June 26, 2017, Ms. Sánchez emailed Plaintiff informing her that the Human Resources Department was investigating her complaints against Ms. Rivera. ECF No. 122-1, at 8, ¶ 30; ECF No. 122-19, at 3. Ms. Sánchez also informed that Plaintiff's request for a transfer had been approved and that she was being transferred to González Lago Funeral Home, effective on June 27, 2017. Id. The decision to transfer Plaintiff was made by Mr. Eduardo Fantauzzi ("Mr. Fantauzzi"), general manager for StoneMor Puerto Rico Cemetery and Funeral, Inc. ECF No. 122-1, at 9, ¶ 34; ECF No. 114-10, at 1, 2, ¶¶ 6, 9. Mr. Fantauzzi approved Plaintiff's transfer because she had requested a transfer and in light of the myriad personal disagreements between Plaintiff and staff at El Señorial Memorial Park. Id.

On June 26, 2017, Plaintiff replied to Ms. Sánchez's email stating that she loved the El Señorial Memorial Park and that

> my emotional peace of mind and a good work environment is a priority, wherefore
> I will await instructions from my supervisor. I regret to remind you that I did not

> select any location or rather the decision for me to transfer to [González Lago Funeral Home] has been made by the company, I simply made myself available for this, in seeking out a solution to such an unpleasant and stressful situation.

ECF No. 122-1, at 8, ¶ 31; ECF No. 122-19, at 1. On June 27, 2017, Plaintiff was transferred from El Señorial Memorial Park to González Lago Funeral Home where she remained a family service counselor. ECF No. 122-1, at 8, ¶ 32; ECF No. 114-27.

On June 27, 2017, Plaintiff sent an email to Ms. Dina Kelly ("Ms. Kelly"), National Vice President of Sales and Marketing, complaining about her transfer to González Lago Funeral Home. Plaintiff informed that "I did not ask for a transfer away [from] my location, my bread winner. I did not choose to be in a funeral home. I did not request this transfer. I did not choose and I did not ask to be transferred." ECF No. 122-1, at 11, ¶ 43; ECF No. 114-32; ECF No. 114-34. On June 27, 2017, Plaintiff filed a charge of discrimination with the EEOC. ECF No. 122-1, at 9, ¶ 33; ECF No. 122-20.

After her transfer, Plaintiff was not restricted from visiting El Señorial Memorial Park in order to conduct sales. Neither at the time of her transfer, nor at any point during her employment at StoneMor was she prevented from visiting El Señorial Memorial Park for official purposes or otherwise. ECF No. 122-1, at 9, ¶ 35; ECF No. 114-10, at 2, ¶ 10; ECF No. 114-25, at 3, ¶ 21. Even while assigned to González Lago Funeral Home, Plaintiff continued to sell cemetery products at El Señorial Memorial Park. ECF No. 122-1, at 9, ¶¶ 36, 37; ECF No. 114-10, at 2, ¶¶ 11-13.

After her transfer, Plaintiff's belongings remained in her previously assigned desk at El Señorial Memorial Park. ECF No. 114-25, at 3, ¶ 22. Plaintiff did not call anyone to inquire whether she could pick up her belongings. ECF No. 122-1, at 11, ¶ 41; ECF No. 122-3, at 87. After several weeks, Ms. Sánchez packed Plaintiff's belongings in a bag and stored them in a

different room so that the desk could be used by another family service counselor. ECF No. 122-1, at 11, ¶ 42; ECF No. 114-25, at 3, ¶ 22.

When Plaintiff arrived at González Lago Funeral Home there was only one desk available within the family service counselors' area. ECF No. 122-3, at 90. However, the ceiling leaked above said desk and Plaintiff was permitted to work out of the showroom. Id. Soon thereafter, the showroom was converted into a nursing area for an employee who had recently given birth. Plaintiff returned to the family service counselor's area and was assigned to the desk with the leak above it. Id. at 91-92. Plaintiff expressed her concerns about the leaking ceiling which was fixed after one month. Id. at 92.

On July 24, 2017, Ms. Lauren Bailey ("Ms. Bailey"), human resources compliance manager, sent a letter to Plaintiff in response to her June 27, 2017 email to Ms. Kelly. Plaintiff was informed by Ms. Bailey that the Human Resources Department at the home office in Trevose, Pennsylvania was provided with the minutes of meeting that was held on June 21, 2017 between Ms. Sánchez, Ms. Pereira, and Plaintiff. Ms. Bailey explained that the minutes reflected that Plaintiff had requested a transfer to another location and that it was unable to determine that her transfer was a retaliatory act. ECF No. 122-1, at 11, ¶ 44; ECF No. 114-34.

StoneMor sales were substantially impacted by the passages of Hurricane Irma and Hurricane María in September 2017. Sales for August 2017 were also impacted as the cut-off date for closings that month was September 5, 2017, the day before Hurricane Irma made landfall in Puerto Rico. ECF No. 122-1, at 10, ¶ 38; ECF No. 114-10, at 3, ¶ 14. As a consequence of Hurricanes Irma and María, the facility at El Señorial Memorial Park suffered significant water damage and lost electric power. Moreover, the roads leading to the facility were blocked by fallen trees and storm debris which made access nearly impossible. El Señorial

Memorial Park did not become somewhat operational until approximately November 2017. El Señorial Memorial Park operated on emergency power (backup generator) until late March 2019. There were no "pre-need" cemetery sales for any family service counselor at El Señorial Memorial Park for the months of September and October 2017. In November 2017, only one family service counselor out of the five active family service counselors had pre-need sales. ECF No. 122-1, at 10, ¶ 39; ECF No. 114-10, at 3, ¶ 15.

In November 2017, Mr. Fantauzzi had a conversation with Plaintiff where she requested a transfer back to El Señorial Memorial Park. ECF No. 122-1, at 12, ¶ 45; ECF No. 114-10, at 3, ¶ 18; ECF No. 122-21, at 1. A few days later, Mr. Fantauzzi asked Plaintiff if she was willing to work together with Ms. Rivera in a harmonious and respectful environment. However, Plaintiff informed that she was no longer interested in returning to El Señorial Memorial Park as she had reached an agreement with her supervisor, Mr. Derek Martínez ("Mr. Martínez), through which she would be allowed to visit El Señorial Memorial Park to work with files and visit the cemetery. ECF No. 122-1, at 12, ¶ 46; ECF No. 114-10, at 3, ¶¶ 18-19; ECF No. 122-21. Mr. Fantauzzi told Plaintiff that she had never been prohibited from visiting El Señorial Memorial Park and she could do so freely assuming she kept her supervisor abreast of her whereabouts. ECF No. 122-1, at 12, ¶ 47; ECF No. 114-10, at 3, ¶¶ 18-19; ECF No. 122-21. On November 30, 2017, Mr. Fantauzzi sent an email to Plaintiff confirming that she would remain working at González Lago Funeral Home and have flexibility to visit El Señorial Memorial Park to work on files and enter the cemetery grounds. ECF No. 122-1, at 12-13, ¶ 48; ECF No. 122-21.

On January 19, 2018, Mr. Martínez sent an email to all employees, including Plaintiff, informing that all visits to customers' houses and other places outside of the workplace had to be

previously notified and authorized by him. ECF No. 122-1, at 13, ¶ 50; ECF No. 122-3, at 96; ECF No. 122-24. On February 9, 2018, Plaintiff received a memorandum from Mr. Martínez that imposed a four-day suspension of employment and pay. Plaintiff was reprimanded in the memorandum for failing to record her entry time to work, the departure time for lunch, and the return time from lunch on January 30, 2018. The time log system reflected that Plaintiff made only one punch on said date at 9:23 PM. ECF No. 122-1, at 13-14, ¶ 51; ECF No. 122-25. Mr. Martínez called Plaintiff on January 30, 2018 at 1:06 PM but she did not answer the call. Instead, Plaintiff sent a text message stating that she was in a meeting. ECF No. 122-1, at 13-14, ¶ 51; ECF No. 122-25. Plaintiff did not sign the memorandum. Id. On February 9, 2018, Plaintiff sent a letter to Mr. Martínez where she expressed her disappointment with the disciplinary measure taken against her. ECF No. 122-1, at 14, ¶ 52; ECF No. 122-26.

On February 12, 2018, Plaintiff filed a second charge with the EEOC alleging that she was subject to various retaliatory acts for filing her charge of discrimination on June 27, 2017. ECF No. 122-1, at 14, ¶ 53; ECF No. 122-23. On March 6, 2018, Mr. Martínez replied to Plaintiff's February 9, 2018 letter. ECF No. 122-1, at 14, ¶ 54; ECF No. 122-27. On April 12, 2018, Plaintiff sent an email to Ms. Kelly resigning from her position. ECF No. 122-1, at 14, ¶ 55; ECF No. 114-39. Plaintiff's resignation email informs that the effective date of her resignation would be April 23, 2018. However, there was a mistake in the resignation date on the email and Plaintiff stopped working on April 13, 2018. ECF No. 122-1, at 15, ¶ 57; ECF No. 114-39; ECF No. 122-3, at 10; ECF No. 114-41. Prior to sending her resignation letter, Plaintiff had already accepted a job offer with SCI Puerto Rico and signed an employment contract on April 10, 2018. ECF No. 122-1, at 14, ¶ 56; ECF No. 122-3, at 113, 115; ECF No. 122-28.

14

Production bonuses for 2017 were paid out on April 13, 2018. ECF No. 122-1, at 15,
¶ 59; ECF No. 114-10, at 4, ¶ 21. StoneMor policy provides that an employee must be actively
employed at the time the bonus is paid or distributed in order to receive a bonus payment. ECF
No. 122-1, at 15, ¶ 58; ECF No. 114-10, at 4, ¶ 21; ECF No. 114-31. Plaintiff's resignation
became effective on April 13, 2018, and thus, she did not receive a $3,000 production bonus.
ECF No. 122-1, at 15, ¶ 59; ECF No. 122-3, at 111; ECF No. 114-10, at 4, ¶ 21. Since April 16,
2018, and up to the present, Plaintiff has been working for SCI Puerto Rico. ECF No. 122-1, at
15, ¶ 60; ECF No. 122-3, at 20; ECF No. 122-28.

## III.   Legal Analysis

### A. Federal Law Claims

### 1. Plaintiff's Title VII Hostile Work Environment Claims

In the amended complaint, Plaintiff alleges that she was subject to a hostile work
environment on the basis of her Catholic religion and Cuban nationality. ECF No. 37, at 2, 4-10.
Title VII prohibits employers from discriminating against any individual "because of such
individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "National
origin refers to the country where a person was born or the country from which his or her
ancestors came." Cerezo-Martin v. Agroman, 213 F. Supp. 3d 318, 324 (D.P.R. 2016) (citing
Espinoza v. Farah Mfg. Co., 414 U.S. 86, 88 (1973)). "Title VII's capacious definition of religion
includes all aspects of religious observance and practice, as well as belief...." Vélez-Sotomayor
v. Progreso Cash and Carry, Inc., 279 F. Supp. 2d 65, 72 (D.P.R. 2003) (citing EEOC v. Unión
Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico, 279 F.3d 49, 56
(1st Cir. 2002)); see also 29 C.F.R. § 1605.1 ("[R]eligious practices ... include moral or ethical

beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views.").

Title VII "makes it unlawful for employers to create a discriminatory hostile or abusive environment." Laboy v. Dick Corp. of Puerto Rico, Inc., Civ. No. 5-1782, 2006 WL 3098756, at *4 (D.P.R. Oct. 30, 2006). To succeed on a hostile work environment claim under Title VII, the plaintiff must show:

> (1) that he is a member of a protected class; (2) that he was subjected to unwelcome harassment; (3) that the harassment was based on his membership of the protected class; (4) that the harassment was so severe or pervasive that it altered the conditions of his employment and created an abusive work environment; (5) that the objectionable conduct was objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established.

Cerezo-Martin v. Agroman, 213 F. Supp. 3d 318, 326 (D.P.R. 2016) (citing Torres-Negron v. Merch & Co., Inc., 488 F.3d 34, 39 (1st Cir. 2007)); O'Rourke v. City of Providence, 235 F.3d 713, 728 (1st Cir. 2001).

"In determining whether a reasonable person would find particular conduct hostile or abusive, a court must mull the totality of the circumstances, including factors such as the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Noviello v. City of Boston, 398 F.3d 76, 92 (1st Cir. 2005) (quoting Faragher v. City of Boca Ratón, 524 U.S. 775, 787-88 (1998)); Aponte–Rivera v. DHL Solutions (USA), Inc., 650 F.3d 803, 808 (1st Cir. 2011) ("When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated.")."The thrust of this inquiry is to distinguish between the ordinary, if

occasionally unpleasant, vicissitudes of the workplace and actual harassment." Noviello, 398

F.3d at 92. "[I]solated incidences and offhand comments are not sufficient to create a hostile

work environment." Laboy, 2006 WL 3098756, at *4. "[T]he hostile work environment standard

must be kept 'sufficiently demanding to ensure that Title VII does not become a general civility

code.'" O'Rourke, 235 F.3d at 729 (quoting Faragher, 524 U.S. at 788).

**a. Plaintiff's Allegations of Religious Harassment**

In the amended complaint, Plaintiff alleges that she was subjected to a hostile work

environment due to her Catholic religion. ECF No. 37, at 2, 4-10. First, Plaintiff alleges that

Ms. Sánchez was "an outspoken evangelical protestant believer and was hiring brothers from her

church or people with the same or like religious preferences, that acted in the workplace as if

they were in church." ECF No. 37, at 4. Plaintiff has failed to substantiate her allegations with

citations to record evidence. Instead, the uncontested evidence shows that Plaintiff did not

participate in the recruitment process for new employees and did not know who applied and how

applicants were selected, or even whether Defendants knew the religious affiliation or creed, if

any, of those applicants who were hired. ECF No. 122-3, at 55-56.

Next, Plaintiff alleges that her co-workers "would at times create a religious circle in the

workplace to pray and she would be forced and/or compelled to participate in such religious

meeting in order to maintain a working relationship with them at the workplace." ECF No. 37, at

5. Plaintiff once again fails to cite to any evidence in the record that she was compelled to

participate in religious meetings and that said meetings constituted harassment on the basis of her

Catholic religion. Plaintiff also has not presented any evidence for a reasonable jury to conclude

that the morning prayers occurred with such pervasiveness that they created an abusive work environment.[4]

Plaintiff alleges in the amended complaint that she was subject to discrimination when "religious citations" were placed in "in the computer monitor that she was using at work." ECF No. 37, at 4. On June 11, 2017, Plaintiff complained to Ms. Sánchez that the background screen of the reception desk computer at El Señorial Memorial Park contained a quote that read, "Humility is the sparkle that makes an authentic leader shine – Ismael Cala." Plaintiff also complained about a sticker that was placed on the reception desk computer monitor that read, "[i]f you remain in me and my words remain in you, ask all that you want and it will be done." ECF No. 114-25, at 2, ¶ 9.

Defendants contend that the quote on the background screen is a secular phrase without religious connotation but concede that the sticker on the computer monitor contains a religious quote.[5] ECF No. 115, at 7-8.  However, Defendants argue that "there is nothing offensive,

---

[4] Furthermore, even if Plaintiff established the prima facie elements that the morning prayers were objectively offensive and that they were so severe and pervasive as to change her working conditions, she has not established a basis for employer liability. "[W]hen a co-worker is responsible for creating a hostile work environment, an employer is liable 'if the harassment [by a co-worker] is causally connected to some negligence' on behalf of the employer." Galarza-Cruz v. Grupo HIMA San Pablo, Inc., Civ. No. 17-1606, 2020 WL 2845357, at *7 (D.P.R. 2020) (citing Noviello v. City of Boston, 398 F.3d 76, 95 (1st Cir. 2005)). "In other words, 'that the employer knew or should have known about the harassment, yet failed to take prompt action to stop it.'" Id. The record evidence reflects that Plaintiff did not tell anyone she was uncomfortable with her co-workers' morning prayer circles. ECF No. 122-3, at 57. There is also no indication that Plaintiff used StoneMor's complaint mechanisms to address her concerns regarding the morning prayer circles.

[5] Although the following sources are not relied upon in resolving the pending motion for summary judgment, it is noteworthy that the sticker at issue references a verse that appears in both Protestant and Catholic Bibles. The New International Version and King James Version, for example, are versions of the Bible that are used by Christians who identify themselves as Protestants and/or Evangelicals. The verse in the New International Version reads, "If you remain in me and my words remain in you, ask whatever you wish, and it will be done for you." See John 15:7 (New International), https://www.bible.com/bible/111/JHN.15.NIV (last visited 4/23/21). Similarly, the verse referenced in the sticker also appears in the King James Version, "If ye abide in me, and my words abide in you, ye shall ask what ye will, and it shall be done unto you." See John 15:7 (King James), https://www.bible.com/bible/1/JHN.15.KJV (last visited April 23, 2021). The New Jerusalem Bible is a version of the Bible used by Roman Catholic Christians. The New Jerusalem Bible also contains the verse in the sticker, "If you remain in me and my words remain in you, you may ask for whatever you please and you will get it." See John 15:7 (New Jerusalem Bible), https://www.catholic.org/bible/book.php?bible_chapter=15&id=50 (last visited April 23, 2021). Although it is possible to bring a discrimination claim on the basis of religion when the alleged discriminatory acts are

demeaning, or aggressive in either of the objected phrases." ECF No. 115, at 7. Plaintiff has not clarified the relevance of the quote in the background screen to her hostile work environment claim on the basis of her Catholic religion. Instead, the record evidence reflects that Plaintiff understood the quote to be a criticism of her supervisor, Ms. Souto. ECF No. 122-1, at 7, ¶ 24. Plaintiff has not carried her prima facie burden showing that the quote in the background screen is objectively offensive. There is also no evidence suggestive of employer liability as the quotes in the screen and sticker were removed the next day after Plaintiff complained to Ms. Sánchez.

Defendants also contend that during Plaintiff's deposition, she further expounded on allegations included in the amended complaint regarding religious harassment that Ms. Rivera called her "the child of the devil" and also referred to her as "the Lord's rebuke." ECF No. 115, at 8. Ms. Rivera denied Plaintiff's allegations that she referred to her as "the devil's daughter" or "the Lord's rebuke." ECF No. 114-6, at 2, ¶ 6. While these facts are in dispute and the alleged assertions, if true, are inappropriate in a professional work setting, they fail to justify a trial because Plaintiff has not proffered evidence to show that Ms. Rivera's comments were sufficiently severe and pervasive to create a hostile work environment. See Byrd v. Postmaster General, 582 Fed. Appx. 787, 791 (11th Cir. 2014) (affirming summary judgment for an employer on religiously-based hostile work environment claim where co-worker's conduct of singing religious songs, quoting religious scripture, preaching, referring to postal employee as the devil, and informing employee that she would go to Hell did not create a hostile work environment under Title VII, since this conduct was not sufficiently severe and pervasive to be objectively hostile and abusive); Hout v. City of Mansfield, 550 F. Supp. 2d 701, 738 (N.D. Ohio

---

perpetrated by a member of one denomination or sect against a member of another denomination or sect within the same religion, it is curious that the Plaintiff in this case, who identifies herself as a Catholic, takes offense about a sticker that paraphrases a verse of the Scriptures used by the Roman Catholic Church without altering its essence.

2008) (finding that statements made by supervisor to an employee that he was a "lying white devil" did not rise to the level of severity and pervasiveness required to sustain a hostile work environment claim). Plaintiff has also not proffered evidence showing that these comments were made because of her Catholic religion. See Rivera v. Puerto Rico Aqueduct and Sewers Auth., 331 F.3d 183, 189 (1st Cir. 2003) ("regardless of the evidentiary course the plaintiff charts, she must show that alleged discriminatory conduct was not 'merely tinged' with remarks abhorrent to her religion but actually was, in either character or substance, discrimination because of religion.")

The above instances, considered separately as well as together, do not rise to the level of severe and pervasive harassment for Plaintiff to meet the prima facie elements of her hostile work environment claim on the basis of her religious beliefs. Viewing the evidence in the light most favorable to Plaintiff, no reasonable fact finder could infer from this evidence that she was subjected to religious harassment giving rise to a hostile work environment under Title VII. Thus, Plaintiff's Title VII hostile work environment claim on the basis of religious discrimination is DISMISSED WITH PREJUDICE.[6]

### b. National Origin Harassment

Plaintiff alleges in the amended complaint that she was subjected to a hostile work environment on the basis of national origin. ECF No. 37, at 5. Plaintiff specifically alleges that her fellow employees would "make reference to her Cuban nationality by starting to sing Cuban songs and would change their accent to imitate the pronunciation and/or diction of a Cuban person and would speak to [her] with a marked Cuban accent." ECF No. 37, at 5. Plaintiff has not cited to any evidence disclosing the identity of the employees that allegedly spoke to her in a

---

[6] Plaintiff has not cited to any record evidence indicating that her transfer to González Lago Funeral Home was the result of discrimination on the basis of her Catholic religion.

Cuban accent. Plaintiff has also not presented evidence indicating that said conduct was sufficiently severe and pervasive as to alter the conditions of her employment.

Regarding Plaintiff's claims that employees would sing Cuban songs, the record evidence reflects that Plaintiff complained that Ms. Avilés sang songs by Celia Cruz to her. ECF No. 122-1, at 8, ¶ 29. Plaintiff also complained that Ms. Avilés would call her "Miss Bárbara" while imitating the tone of voice of Peruvian TV personality Ms. Laura Bozzo.[7] Id.

While some of the alleged incidents previously mentioned may be described as unprofessional, Plaintiff has not proffered evidence that these comments or songs were sufficiently egregious and widespread to sustain a hostile work environment claim or a claim of harassment due to national origin. There is a dearth of evidence for a reasonable jury to infer that such incidents were severe and pervasive as to alter the terms or conditions of Plaintiff's employment. See Rojas v. GMD Airlines Services, Inc., 254 F. Supp. 3d 281, 298 (D.P.R. 2015) ("[S]imple teasing ... offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the conditions of employment."); Bajana v. Potter, 396 F. Supp. 2d 78, 85 (D.P.R. 2005) ("there is no evidence to demonstrate her workplace was 'permeated with discriminatory intimidation, ridicule and insult that [was] sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment.'" (quoting Oncale v. Sundowner Offshore Services, 523 U.S. 75, 78 (1998))). Thus, Plaintiff's Title VII hostile work environment claim on the basis of national origin is DISMISSED WITH PREJUDICE.[8]

---

[7] Defendants also raise that Plaintiff complained in her deposition that Mr. Diego Vázquez, administrative assistant, would mockingly sing the song "Cucurrucucu paloma" by Mexican-artist Pedro Infante to her. ECF No. 115, at 10; ECF No. 122-3, at 67. Plaintiff has not proffered evidence indicating the severity and pervasiveness of this conduct or that it was harassment on the basis of her Cuban national origin.

[8] Plaintiff has not cited to any record evidence to suggest that her transfer to González Lago Funeral Home was the result of discrimination on the basis of her Cuban national origin.

**2. Plaintiff's Title VII Constructive Discharge Claim**

"'[C]onstructive discharge is a claim distinct from the underlying discriminatory act' of a Title VII claim." Reyes Caparrós v. Barr, Civ. No. 15-2229, 2020 WL 1487267, at *5 (D.P.R. Feb. 28, 2020) (quoting Green v. Brennan, 136 S. Ct. 1769, 1779 (2016)). "Constructive discharge typically 'refers to harassment so severe and oppressive that staying on the job while seeking redress—the rule save in exceptional cases—is intolerable.'" Gerald v. University of Puerto Rico, 707 F.3d 7, 25 (1st Cir. 2013) (quoting Lee–Crespo v. Schering–Plough Del Caribe, Inc., 354 F.3d 34, 45 (1st Cir. 2003)).

A constructive discharge claim under Title VII requires a plaintiff "to show that her working conditions were so difficult or unpleasant that a reasonable person in [her] shoes would have felt compelled to resign." Roman v. Potter, 604 F.3d 34, 42 (1st Cir. 2010) (citations omitted); Landrau Romero v. Banco Popular De Puerto Rico, 212 F.3d 607, 613 (1st Cir. 2000) ("the plaintiff must prove that [her] employer imposed working conditions so intolerable that a reasonable person would feel compelled to forsake [her] job rather than to submit to looming indignities."); Gautier v. Brennan, Civ. No. 17-2275, 2019 WL 2754673, at *15 (D.P.R. June 28, 2019) ("the Court must determine whether the working conditions imposed by the employer had become so onerous, abusive, or unpleasant that a reasonable person in the employee's position would have felt compelled to resign.").

"Importantly, to prove a constructive discharge, a plaintiff must offer evidence of more severe harassment than that required for a hostile work environment claim." Acevedo-Milán v. Home Etc. Incorporado, Civ. No. 18-1526, 2020 WL 5875163, at *17 (D.P.R. Oct. 1, 2020) (citations omitted). "The Supreme Court has indicated that the hostile work environment claim is a 'lesser included component' of 'the graver claim of hostile-environment constructive

discharge.'" Acosta v. Harbor Holdings & Operations, Inc., 674 F. Supp. 2d 351, 362 (D.P.R. 2009) (citing Pennsylvania State Police v. Suders, 542 U.S. 129, 149 (2004)). In other words, '[c]reation of a hostile work environment is a necessary predicate to a hostile-environment constructive discharge case ... [T]he only variation between the two claims is the severity of the hostile working conditions.'" Id. "A plaintiff seeking to withstand summary judgment must point to evidence in the record showing that just such conditions existed. The standard to meet is an objective one, it cannot be triggered solely by an employee's subjective beliefs, no matter how sincerely held." Gerald, 707 F.3d at 25 (citations omitted).

Plaintiff's resignation from StoneMor became effective on April 13, 2018. However, as discussed in the previous section, Plaintiff failed to satisfy her prima facie burden that she was subjected to a hostile work environment on the basis of religion or national origin. Therefore, Plaintiff's constructive discharge claim pursuant to Title VII must also fail because the "[c]reation of a hostile work environment is a necessary predicate to a hostile-environment constructive discharge case." Acosta, 674 F. Supp. 2d at 362 (quoting Suders, 542 U.S. at 149.); see also Franceschi-Vázquez v. CVS Pharmacy, 183 F. Supp. 3d 333, 343 (D.P.R. 2016) ("because [plaintiff's] working conditions were not intolerable enough to create a hostile work environment . . . those conditions necessarily did not reach the greater level of severity required to establish a constructive discharge claim."); Rodríguez-Vega v. Policlínica la Familia de Toa Alta, Inc., 942 F. Supp. 2d 210, 234 (D.P.R. 2013) (granting defendant's motion for summary judgment on plaintiff's constructive discharge claim because plaintiff failed to establish that she was subjected to a hostile work environment); Amira-Jabbar v. Travel Services, Inc., 726 F. Supp. 2d 77, 87 (D.P.R. 2010) ("Because plaintiff failed to establish a prima facie case for her hostile work environment claim, the court needs not address her constructive discharge claim.").

Even assuming arguendo that Plaintiff established that she was subject to a hostile work environment, which she has not, her constructive discharge claim would still fail because she has not set forth evidence of more severe harassment than that required for a hostile work environment claim. See Amira-Jabbar, 726 F. Supp. 2d at 95 ("In order to prove [a constructive discharge] claim, plaintiff needed to offer evidence of more severe harassment than that required for a hostile work environment claim."). Plaintiff's contention that she was constructively discharged is also undermined by the fact that she had signed an employment contract with SCI Puerto Rico on April 10, 2018 prior to submitting her resignation. Ultimately, Plaintiff "has not pointed to evidence in the record from which a jury could reasonably conclude that her working conditions . . . were so intolerable that a reasonable person in her position would have felt compelled to resign." Franceschi-Vázquez, 183 F. Supp. 3d at 343. Thus, Plaintiff's constructive discharge claim under Title VII is DISMISSED WITH PREJUDICE.

### 3. Plaintiff's Title VII Retaliation Claims

Plaintiff alleges that she was subjected to retaliatory acts in violation of Title VII because she filed charges of discrimination with the EEOC. ECF No. 37, at 10-12. "Title VII makes it unlawful for 'an employer to discriminate against any of his employees ... because [the employee] has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII].'" Planadeball v. Wyndham Vacation Resorts, Inc., 793 F. 3d 169, 175 (1st Cir. 2015) (citing 42 U.S.C. § 2000e–3(a)). "Title VII retaliation claims proceed under the burden-shifting framework outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 801–03 (1973)." Id. Under the McDonnell Douglas framework, "[t]he plaintiff must first establish a prima facie claim before the burden shifts to the employer to

provide a legitimate, non-discriminatory reason for the adverse action. The burden then shifts back to the plaintiff to provide evidence that the offered reason is pretext cloaking the employer's retaliatory animus." Pizarro-Correa v. Puerto Rico Internal Revenue Department, 267 F. Supp. 3d 369, 379 (D.P.R. 2017); Collazo v. Bristol-Myers Squibb Mfg., Inc., 617 F.3d 39, 46 (1st Cir. 2010).

To establish a prima facie case of retaliation, a plaintiff must show "that (1) he engaged in protected conduct; (2) he experienced an adverse employment action; and (3) there was a causal connection between the protected conduct and the adverse employment action." Garcia-Garcia v. Costco Wholesale Corp., 878 F.3d 411, 425 (1st Cir. 2017). "An employee has engaged in activity protected by Title VII if [he] has either (1) opposed any practice made an unlawful employment practice by Title VII or (2) made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII." Fantini v. Salem State Coll., 557 F.3d 22, 32 (1st Cir. 2009) (citing 42 U.S.C. § 2000e-3(a)). "Protected conduct also includes 'informal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges.'" Micheo-Acevedo v. Stericycle of Puerto Rico, Inc., Civ. No. 15-1097, 2017 WL 5152173, at *11 (D.P.R. Mar. 31, 2017) (citing Planadeball, 793 F.3d at 175).

Plaintiff's filing of two charges of discrimination with the EEOC on June 27, 2017 and February 12, 2018 constitutes protected conduct under Title VII. See Mariani–Colon v. Dep't. of Homeland Sec. ex rel. Chertoff, 511 F.3d 216, 223 (1st Cir. 2007); Rojas v. GMD Airlines Services, Inc., 254 F. Supp. 3d 281, 299 (D.P.R. 2015). Defendants concede that Plaintiff engaged in protective conduct and satisfied the first prong of her prima facie case of retaliation.

ECF No. 115, at 18. The analysis now turns to whether Plaintiff experienced an adverse employment action.

"The First Circuit has explained that '[t]o determine if an employment action is in fact adverse, we look for whether it has materially change[d] the conditions of plaintiff['s] employ.'" Natal Peréz v. Oriental Bank & Trust, 291 F. Supp. 3d 215, 228 (D.P.R. 2008) (quoting Cherkaoui v. City of Quincy, 877 F.3d 14, 25 (1st Cir. 2017)). "An adverse employment action for retaliation purposes includes, 'demotions, disadvantageous transfers or assignments, denial of transfers, or refusals to hire.'" Diaz v. Ashcroft, 324 F. Supp. 2d 343, 348 (D.P.R. 2004) (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116-117 (2002)); Gu v. Boston Police Dep't, 312 F.3d 6, 14 (1st Cir. 2002) ("Material changes include demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees.").

### a. Plaintiff's Allegations Regarding Receiving the Least Desirable Schedule in February 2018 and the Denial of Commissions

Plaintiff alleges in the amended complaint that she received the "least desirable schedule" in February 2018 and was improperly denied commissions. ECF No. 37, at 6-7. However, Defendants contend that Plaintiff had "limited recollection" regarding these alleged events and agreed to supplement her document production with evidence she claimed to have available, yet never did. ECF No. 115, at 23-24. A denial of commissions and reduction in salary may constitute an adverse employment action. See Graham v. Macy's, Inc., Civ. No. 14-3192, 2016 WL 354897, at *8 (S.D.N.Y. Jan. 28, 2016) ("Denial of earned commissions constitutes a *de facto* reduction in pay, and could certainly dissuade a reasonable worker from bringing a discrimination charge."). Plaintiff, however, has not identified any pertinent evidence to substantiate her allegations that she was denied commissions.

Regarding Plaintiff's allegations that she received the least desirable schedule in February 2018, Plaintiff sent an email to Mr. Martínez on February 26, 2018 requesting leave for a particular day, but she did not receive a response. ECF No. 122-3, at 102, 103. "While denying an employee leave can constitute an adverse employment action, '[a] single denial of leave is not an adverse employment action when it affects leave on a specific date and time, but not the employee's amount of or right to take leave in general.'" Morris v. Baton Rouge City Constable's Office, 299 F. Supp. 3d 773, 785 (M.D. La. 2018) (quoting Ogden v. Potter, 397 Fed. App'x. 938, 939 (5th Cir. 2010)); see Chin-McKenzie v. Continuum Health Partners, 876 F. Supp. 2d 270, 286 (S.D.N.Y. 2012) (Plaintiff alleging retaliation under Title VII did not "incur a materially adverse change in work conditions when she ... was denied requested days off. These are the sort of minor annoyances that do not rise to the level of actionable retaliation under Title VII.").

Plaintiff has not cited to any record evidence indicating that she was denied leave requests on multiple occasions, she was prohibited from taking leave generally, or that she was unable to accrue leave. Plaintiff has also not proffered evidence that the denial of leave was part of discipline imposed on her. The mere fact that Plaintiff's single request for leave was not granted is insufficient by itself to amount to a materially adverse action. Thus, Plaintiff's claim that she was assigned the least favorable schedule in February 2018 does not constitute an adverse employment action.

### b. Plaintiff's Transfer to González Lago Funeral Home

Plaintiff alleges that she was transferred to González Lago Funeral Home in retaliation for filing a charge of discrimination with the EEOC. See ECF No. 37, at 5. Plaintiff filed her first charge of discrimination on June 27, 2017. ECF No. 122-20. However, Plaintiff was informed on

June 26, 2017 that she was being transferred to González Lago Funeral Home, effective June 27, 2017. ECF No. 122-19, at 3. Thus, it does not follow that Plaintiff was transferred in retaliation for filing the charge of discrimination as she was notified of her transfer the day before filing the charge of discrimination. Nonetheless, Plaintiff's internal complaint on June 11, 2017 regarding the quotes on the reception desk computer constitutes protected conduct under Title VII. See Micheo-Acevedo, 2017 WL 5152173, at *11. Thus, the issue is whether Plaintiff's transfer to González Lago Funeral Home constituted an adverse employment action and her transfer was in retaliation for filing the June 11, 2017 internal complaint.[9]

"[A] transfer may constitute an adverse employment action." Caraballo-Caraballo v. Correctional Admin., 892 F.3d 53, 61 (1st Cir. 2018). However, a "'transfer that does not involve a demotion in form or substance,' including one that imposes 'only minor changes in working conditions,' is not an adverse employment action." Id. (quoting Marrero v. Goya of P.R., Inc., 304 F.3d 7, 23 (1st Cir. 2002)); Ramos v. Toperbee Corp., 241 F. Supp. 3d 305, 334 (D.P.R. 2017) ("a transfer or reassignment that involves only minor changes in working conditions . . . normally does not constitute an adverse employment action."). "A reassignment without salary or work hour changes may, in some circumstances, be an adverse employment action if it constitutes a demotion evidenced by 'a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.'" Soto v. McHugh, 158 F. Supp. 3d 34, 57 (D.P.R. 2016) (citing Kocsis v. Multi–Care Management, Inc., 97 F.3d 876, 886 (6th Cir. 1996)).

Plaintiff alleges in the amended complaint that she was prohibited from entering El Señorial Memorial Park after she was transferred and that her "earnings and sales potential

---

[9] Although Plaintiff does not explicitly claim that her transfer to the González Lago Funeral Home was in retaliation for her filing of the June 11, 2017 internal complaint, the matter will be addressed in an abundance of caution.

markedly diminished, having an adverse impact in her salary and commissions and therefore annual bonuses." ECF No. 37, at 5, 6. Plaintiff further alleges in the amended complaint that she was making over $100,000 in sales, commissions, and bonuses before her transfer which cut her earnings "almost by half." Id. at 6. Defendants contend that there is no evidence to suggest that Plaintiff's transfer had any material effect on her employment as she remained a family counselor and that the sales of all family counselors were greatly impacted in August to November 2017 by the passage of Hurricanes Irma and María. ECF No. 115, at 19-20.

Plaintiff's allegations in the amended complaint that she was prohibited from El Señorial Memorial Park after her transfer cannot prosper. Plaintiff has not cited to record evidence to support her allegations that she was barred from El Señorial Memorial Park, and thus, has not controverted Defendants' material fact that she was permitted to visit El Señorial Memorial Park and continued to sell cemetery and mortuary products from said location. ECF No. 122-1, at 9, ¶¶ 36-37.

Plaintiff has also not cited to record evidence contrasting her pre- and post-transfer job duties and responsibilities, compensation, benefits, working conditions, and hours for a reasonable jury to infer that her transfer to González Lago Funeral Home rises to the level of a materially adverse employment action. See Arroyo-Flores v. IPR Pharm., Inc., Civ. No. 15-1998, 2017 WL 944194, at *13 (D.P.R. Mar. 9, 2017) ("A materially adverse action may include . . . a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.") (citations omitted). Plaintiff has also not proffered evidence that the transfer resulted in an unreasonably longer commute from her home, she was required to travel more for work, that the transfer was less conducive to career advancement, or that the position at

González Lago Funeral Home was less prestigious. See Beyer v. County of Nassau, 524 F.3d 160, 165 (2d Cir. 2008) (explaining that "an adverse employment action can exist when an employee's new assignment is materially less prestigious, materially less suited to his skills and expertise, or materially less conducive to career advancement."); Shaw v. Donahoe, Civ. No. 11-2859, 2014 WL 1168572, at *18 (W.D. Tenn. Mar. 21, 2014) ("When determining whether a reassignment or relocation of a work station is materially adverse, one factor that can be considered is increased commute distance.").

Plaintiff alleges in the amended complaint that Defendants retaliated against her because she was assigned a "dingy desk beneath a leaking ceiling" at González Lago Funeral Home. ECF No. 37, at 5. The First Circuit has held that "petty slights or minor annoyances that often take place at work and that all employees experience . . . fall outside the scope of the anti-discrimination laws." Billings v. Town of Grafton, 515 F.3d 39, 54 (1st Cir. 2008) (citations omitted); see also Sánchez-Rodriguez v. AT&T Wireless, 728 F. Supp. 2d 31, 39 (D.P.R. 2010) ("Any materially adverse change, however, "must be more disruptive than a mere inconvenience . . ." (citing Marrero, 304 F.3d at 23.)). The fact that Plaintiff was assigned a desk beneath a leaking ceiling, while inconvenient, does not rise to the level of a materially adverse employment action, especially in view that it is uncontested that the ceiling was fixed within one month after she communicated the problem of the leaks.

Because Plaintiff cannot merely rely on her complaint's allegations and has not cited to evidence in the record showing material adverse consequences resulting from her transfer to González Lago Funeral Home, there is insufficient evidence for a reasonable jury to find that her transfer constituted a materially adverse employment action. See Aguirre v. Mayagüez Resort & Casino, Inc., 59 F. Supp. 3d 340, 352 (D.P.R. 2014) ("a lateral transfer or shift change that does

not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action."). Accordingly, Plaintiff has failed to establish a prima facie case of retaliation regarding her transfer to González Lago Funeral Home.

### c. Plaintiff's Belongings at El Señorial Memorial Park

In the amended complaint, Plaintiff alleges that she was retaliated against because she "was not allowed to enter [El Señorial Memorial Park] to get her belongings which were placed in a black plastic trash bag without her consent and knowledge and left in a corner for more than three months." ECF No. 37, at 5. As stated earlier, Plaintiff has not cited to record evidence controverting Defendants' material fact that she was permitted to visit El Señorial Memorial Park and continued to sell cemetery and mortuary products from said location. ECF No. 122-1, at 9, ¶¶ 36-37. Plaintiff also did not call anyone to inquire whether she could pick up her belongings. The mere fact that Ms. Sánchez packed Plaintiff's belongings so that her desk could be used by another family service counselor is insufficient to constitute a materially adverse action. See Morales–Vallellanes v. Potter, 605 F.3d 27 (1st Cir. 2010) (An adverse employment action "typically involves discrete changes in the terms of employment, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.").

### d. The Reporting of Plaintiff's Income to the Puerto Rico Treasury Department ("Departamento de Hacienda")

Plaintiff alleges in the amended complaint that StoneMor reported erroneous income to the Puerto Rico Treasury department forcing her to file amended returns and "were part of a pattern to force her to quit her job." ECF No. 37, at 6. Defendants, however, contend that Plaintiff was issued amended W-2s in April 2016 and March 2017 in order to correct designations of taxable income with respect to her contributions to qualified retirement plans.

ECF No. 115, at 22; ECF No. 121-1, at 4, ¶ 16; ECF No. 122-3, at 88; ECF No. 117-1; ECF No. 117-2. The amendments to Plaintiff's W-2s in April 2016 and March 2017 occurred before Plaintiff filed the first charge of discrimination on June 26, 2017. Therefore, Plaintiff has not set forth evidence satisfying her prima facie burden of causation because the amendments to her W-2s precede any protected conduct.[10]

### e. February 9, 2018 suspension

Plaintiff alleges that she was suspended in retaliation for filing the June 27, 2017 charge of discrimination before the EEOC. ECF No. 37, at 7, ¶ 22. Defendants concede that a suspension from employment constitutes an adverse employment action. See ECF No. 115, at 22; Arroyo-Flores, 2017 WL 944194, at *14 (explaining that an employee's suspension from employment constitutes an adverse employment action). However, Defendants argue that Plaintiff has not established a causal link between her protected conduct and her suspension on February 9, 2018. ECF No. 115, at 22. As stated earlier, to establish a prima facie case of retaliation, a plaintiff must show that "there was a causal connection between the protected conduct and the adverse employment action." Garcia-Garcia, 878 F.3d at 425.

Plaintiff has not set forth any arguments establishing a causal connection between her protected conduct and suspension. While very close temporal proximity may give rise to an inference of causation, the seven months between the June 17, 2017 charge of discrimination and the February 9, 2018 suspension render any inference inadequate that the suspension was a retaliatory act. See Calero–Cerezo v. U.S. Dept. of Justice, 355 F.3d 6, 25 (1st Cir. 2004) ("Three and four month periods have been held insufficient to establish a causal connection based on temporal proximity."); Rojas Ramirez v. BMJ Foods, Inc., Civ. No. 09-1593, 2011 WL

---

[10] Plaintiff has also not proffered evidence indicating a causal nexus of the amendments of her W-2s to her claims of discrimination on the basis of religion or national origin.

693621, at *9 (D.P.R. Feb. 24, 2011) (explaining that four months between protected conduct and adverse employment action did not establish a causal connection based on temporal proximity); Godoy v. Maplehurst Bakeries, Inc., 747 F. Supp. 2d 298, 315-316 (D.P.R. 2010) (finding that a four month interval between plaintiff's filing of a grievance and her termination is "too long a period to establish a causal inference based solely on temporal proximity.").

Even assuming arguendo that Plaintiff established a causal connection, which she has not done, Defendants have offered a legitimate, non-discriminatory reason that Plaintiff was suspended for failing to record her entry time to work, the departure time for lunch, and the return time from lunch on January 30, 2018, in violation of StoneMor attendance policies. ECF No. 115, at 24-25. An employee's failure to adhere to attendance policies constitutes a legitimate, non-discriminatory reason for an adverse employment action. See Sánchez-Estrada v. MAPFRE Praico Ins. Co., 126 F. Supp. 3d 220, 233-34 (D.P.R. 2015) (finding that defendant proffered a legitimate, nondiscriminatory reason for plaintiff's negative evaluation for failing to adhere to the company's attendance and punctuality policy); Dabney v. Christmas Tree Shops, 958 F. Supp. 439, 453 (S.D.N.Y. 2013) (finding that defendant "articulated a legitimate, nondiscriminatory reason for terminating plaintiff—namely, her violation of the attendance policy" where plaintiff did not properly punch her time); Budy v. Fed. Express Corp., Civ. No. 14-807, 2015 WL 7568658, at *6 (N.D. Ohio Nov. 24, 2015) (finding that defendant terminated plaintiff for the legitimate, nondiscriminatory reason of "failure to timely arrive to work and to properly punch her time card.").

Because Defendants met their burden at step two, the burden shifts back to Plaintiff to show that Defendants' justification for her suspension is in fact pretext and that the real reason was retaliatory animus. Plaintiff has failed to cite to sufficient evidence in the record for a

reasonable factfinder to infer that Defendants' proffered reason for her February 9, 2018

suspension was a pretext. Therefore, Plaintiff's Title VII retaliation claim under this theory fails.

### f. The 2017 Production Bonus

Plaintiff claims that she did not receive a 2017 production bonus of $3,000 in retaliation

for filing a second charge of discrimination before the EEOC on February 12, 2018. ECF No. 37,

at 7, ¶ 23. Defendants concede that the nonpayment of a bonus qualifies as a materially adverse

employment action and that the temporal proximity of two months between Plaintiff's second

charge of discrimination and the nonpayment of the bonus is sufficient to establish causation at

the prima facie stage. ECF No. 115, at 23.

Because Plaintiff established a prima facie claim of retaliation, the burden shifts to the

"employer to provide a legitimate, non-discriminatory reason for the adverse action." Pizarro-

Correa, 267 F. Supp. 3d at 379. Defendants contend that Plaintiff did not receive a 2017

production bonus on April 13, 2018 because she was not actively employed when the bonuses

were distributed as required by StoneMor policy. ECF No. 115, at 25.

Defendants' proffered reason that Plaintiff did not receive a 2017 production bonus

because she was not actively employed when the bonuses were distributed constitutes a

legitimate, nondiscriminatory reason to withhold the bonus. See Evans v. Books-A-Million, Civ.

No. 7-2172, 2010 WL 11561447, at *12 (N.D. Ala. Apr. 6, 2010) (explaining that defendant's

proffered a legitimate, nondiscriminatory reason that plaintiff was not paid a bonus because she

was not employed on the date the Audit Committee approved financial statements as required by

defendant's policy); Lott v. Coreone Tech., LLC, Civ. No. 14-5848, 2016 WL 462486, at *12

(S.D.N.Y. Feb. 2, 2016) (finding that defendant met its burden of proffering a legitimate,

nondiscriminatory reason that plaintiff was not paid a 2013 bonus because he was not employed

34

when the 2013 bonuses were paid); <u>Smith v. Books-A-Million</u>, Civ. No. 07-1619, 2009 WL 10694611, at *10 (N.D. Ala. June 29, 2009) (explaining that defendant's reason that plaintiff was not paid a corporate bonus because she was not employed at the time that the Audit Committee approved financial statements, which was a requirement in order to receive a bonus, constituted a legitimate, nondiscriminatory reason for not paying the bonus).

Because Defendants met their burden at step two, the burden shifts back to Plaintiff to show that Defendants' justification is in fact pretext. Plaintiff has not pointed to any record evidence for a reasonable jury to infer that Defendants' proffered reason for not paying her the 2017 production bonus is pretextual. Further, Plaintiff cannot rely on temporal proximity between her second charge of discrimination on February 12, 2018 and the nonpayment of the bonus on April 13, 2018. Close temporal proximity, without more, is insufficient to show that Defendants' reason that Plaintiff did not receive a 2017 production bonus because she was not actively employed when they were distributed is pretextual. <u>See</u> <u>Echevarría v. AstraZeneca Pharm. LP</u>, 856 F.3d 119, 138 (1st Cir. 2017). Thus, Plaintiff's Title VII retaliation claims are DISMISSED WITH PREJUDICE.

**B. Puerto Rico Law Claims**

**1. Plaintiff's Law 100 Claims**

Law 100 is Puerto Rico's general employment discrimination statute that "prohibits discrimination based on: age, race; color; sex; sexual orientation; gender identity; social or national origin; social condition; political affiliation; political or religious beliefs; for being a victim, or perceived as a victim, of domestic violence, sexual assault or stalking; or for being a servicemember or ex-servicemember in the United States Armed Forces, or holding veteran status." <u>Mercado Cordova v. Walmart Puerto Rico, Inc.</u>, 369 F. Supp. 3d 336, 362 (D.P.R. 2019);

29 L.P.R.A. § 146. Plaintiff alleges that she was discriminated against on the basis of her religious beliefs and national origin in violation of Law 100. ECF No. 37, at 13. Plaintiff, however, does not clarify whether she is pursuing a hostile work environment claim or constructive discharge claim under Law 100. Nonetheless, Plaintiff's Law 100 claims under either theory are without merit.

"Hostile work environment claims brought pursuant to Law 100 are 'essentially the same as a Title VII hostile work environment claim.'" Climent-García v. Autoridad de Transporte Maritimo y las Islas Municipio, Civ. No. 16-2513, 2019 WL 441996, at *10 (D.P.R. Jan. 25, 2019) (quoting Aponte–Rivera v. DHL Solutions (USA), Inc., Civ. No. 7-1950, 2010 WL 376330, *2 (D.P.R. 2010)); Acevedo-Milán v. Home Etc. Incorporado, Civ. No. 18-1526, 2020 WL 5875163, at *19 (D.P.R. Oct. 1, 2020) ("Title VII hostile work environment claims brought under ... Law 100 are essentially the same."). Plaintiff's hostile work environment claim under Law 100 relies on the same factual allegations as her dismissed Title VII hostile work environment claim. Thus, Plaintiff's hostile work environment claim under Law 100 is DISMISSED WITH PREJUDICE. See Climent-Garcia, 2019 WL 441996, at *10 ("Because the Court determined that Plaintiff's Title VII hostile work environment claim should be dismissed, Plaintiff's analogous claim under Law 100 must suffer the same fate and must thus be DISMISSED with prejudice.").

Plaintiff's constructive discharge claim under Law 100 also cannot be sustained. For a constructive discharge claim under Law 100, "an employee must allege: (1) that he was actually or constructively discharged, and (2) that the decision was discriminatory." Pacheco-Muniz v. Gonzalez-Cruz, Civ. No. 12-2058, 2014 WL 1320276, at *12 (D.P.R. Apr. 1, 2014) (citing Velásquez–Fernández v. NCE Foods, Inc., 476 F.3d 6, 11 (1st Cir. 2007)). "If this minimal

showing is made, the burden shifts to the employer to prove by a preponderance of the evidence that it had 'just cause' for its actions, which, if established, then shifts the burden again to the plaintiff, who must prove pretext." Daumont Colón v. Cooperativa de Ahorro y Crédito, Civ. No. 15-3120, 2018 WL 10741870, at *5 (D.P.R. May 9, 2018) (citing Cardona Jiménez v. Bancomercio de Puerto Rico, 174 F.3d 36, 43 (1st Cir. 1999)).

In the amended complaint, Plaintiff alleges that she "was forcibly moved to a hostile and non-productive environment at the [González Lago Funeral Home] to force her to quit." ECF No. 37, at 6. However, Plaintiff has not cited to any record evidence indicating that her transfer was the result of discriminatory animus. Furthermore, even assuming arguendo that Plaintiff did not request a transfer (compare emails where Plaintiff states that "I think it is time to ask for a transfer to another location . . ." ECF No. 122-17 and "I am at your disposal for a transfer to another location." ECF No. 122-16 with "I did not ask for a transfer away [from] my location . . ." ECF No. 114-32), Plaintiff has not identified any evidence in the record that Defendants' reason for her transfer based on her myriad personal disagreements with staff at El Señorial Memorial Park was a pretext. Moreover, Plaintiff has not cited to any specific record evidence that her "working conditions [at González Lago Funeral Home] were so difficult or unpleasant that a reasonable person in [her] shoes would have felt compelled to resign." Pacheco-Muniz, 2014 WL 1320276, at *12 (citations omitted). Thus, Plaintiff's claim of constructive discharge under Law 100 is DISMISSED WITH PREJUDICE.

### 2. Plaintiff's Law 80 claims

"Puerto Rico Law 80 prohibits dismissal of employees without just cause." Hoyos v. Telecorp Comm., Inc., 488 F.3d 1, 6 (1st Cir. 2007); 29 L.P.R.A. § 185a. "[T]he Law 80 analysis is whether plaintiff can raise an issue of material fact as to whether she was constructively

discharged." <u>Navas v. Multisystems Restaurants</u>, Civ. No. 6-2163, 2008 WL 747074, at *10 (D.P.R. Mar. 18, 2008). "Under Law 80, constructive discharge is defined as 'the resignation of the employee caused by the actions of the employer directed to induce or compel him to resign, such as imposing or trying to impose on him more onerous working conditions, reducing his salary, lowering his category or submitting him to derogatory criticisms or humiliations by deed or word.'" <u>Id.</u> (citing 29 L.P.R.A. § 185e).

"The basic elements for a constructive discharge claim are: (1) considerably serious actions by the employer that create an intimidating, hostile and offensive work environment; and (2) for the employee to have no other available alternative but to resign." <u>Rivera v. DHL Global Forwarding</u>, 536 F. Supp. 2d 148, 156 (D.P.R. 2008); see <u>Torres–Alman v. Verizon Wireless Puerto Rico, Inc.</u>, 522 F. Supp. 2d 367, 400 (D.P.R. 2007) ("in order for an employer's voluntary and unjustified acts to be deemed an implicit discharge under [Law 80], the employee must prove that the only reasonable alternative he had left was to give up his job").

Plaintiff resigned from StoneMor on April 13, 2018. However, Plaintiff has not cited to adequate evidence in the record to create a genuine issue that she was left no reasonable alternative but to resign from her position. Plaintiff has not proffered evidence of considerably serious actions by StoneMor "that create an intimidating, hostile and offensive work environment." <u>Rivera</u>, 536 F. Supp. 2d at 156. Plaintiff has also failed to proffer sufficient objective evidence contrasting her pre- and post- transfer job duties, income, benefits, hours, and working conditions for a reasonable fact finder to infer that she had no choice but to resign due to her transfer to González Lago Funeral Home. Therefore, Plaintiff's Law 80 claim is DISMISSED WITH PREJUDICE. See <u>González-López v. State Industrial Products Corp.</u>, Civ. No. 16-2710, 2019 WL 8370884, at *19 (D.P.R. Mar. 20, 2019).

**IV.     Conclusion**

For the foregoing reasons, Defendants' motion for summary judgment (ECF No. 114) is GRANTED. Accordingly, Plaintiff's federal law claims of hostile work environment, constructive discharge, and retaliation pursuant to Title VII are hereby DISMISSED WITH PREJUDICE. Plaintiff's Puerto Rico law claims under Law 100 and Law 80 are also DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 29th day of April, 2021.

s/Marcos E. López
U.S. Magistrate Judge